DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1916.

---

## Chicago Mill & Lumber Company of Cairo, Appellee, v. Mary Boynton Townsend, Appellant.

### Gen. No. 6,216.

1. COVENANTS, § 2*—*what is nature of.* A covenant is a species of express contract.

2. PLEADING, § 152*—*when defendant must file affidavit of merits with plea.* Where a covenant in a warranty deed provided that the warranty should be for a specified amount and that the grantor should be liable to the grantee for such amount, in the event of a breach of the covenant, for interest thereon, taxes paid and for a reasonable attorney's fee in defending any suit for the lands in which the claimants should prevail and costs of such suit, *held* that an action for recovery on such covenant is a suit on a contract for the payment of money within the provisions of section 55 of the Practice Act (J. & A. ¶ 8592), requiring the defendant to file an affidavit of merits with his plea, when the plaintiff attached an affidavit of his claim to his declaration.

3. LIMITATION OF ACTIONS, § 21*—*when cause of action accrues for breach of covenant of warranty.* Under a covenant of warranty contained in a deed of real estate providing that the grantor should pay a specified amount for all of the land which should be lost to the grantee in consequence of a breach of the warranty, *held* that no cause of action would accrue on such covenant until the

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

grantee was actually evicted by the holder of the paramount title, and that the statute of limitations would not begin to run until that time.

4. LIMITATION OF ACTIONS, § 9*—*when foreign statute is inapplicable to cause of action arising in foreign State.* Under section 20 of the Illinois Limitation Act (J. & A. ¶ 7215), the statute of limitations of a foreign State does not apply to a cause of action arising therein unless the parties were nonresidents of the State of Illinois at the time the cause of action accrued.

5. INTEREST, § 47*—*how should be computed on contract not providing method of computation.* Where a contract for the payment of money contains a stipulation for the recovery of interest but does not, either expressly or impliedly, fix a time from which such interest is to be computed, the interest should be computed from the date of the contract.

6. COVENANTS, § 42*—*what damages are recoverable for breach of covenant in warranty deed.* In an action on a covenant in a warranty deed providing that the grantor should be liable for a specified amount, in the event of a breach of the warranty, interest thereon, taxes paid on the land, and a reasonable attorney's fee in defending any suit for the lands in which the claimant should prevail and costs of such suit, where the grantee was allowed in such a suit credit for such taxes paid on an accounting for timber taken by him from the land and charged against him in such suit, *held* that such accounting for the timber taken was a necessary part of that suit and its defense, and that the grantee would not be entitled to the amount of such taxes paid and credited in such accounting as a part of the damages to be recovered in such action on the covenant; and that the grantee would be entitled to recover all reasonable attorney's fees and the entire cost incurred in the defense of such suit both before and after it was remanded and redocketed by order of the Supreme Court.

7. INTEREST, § 7*—*when recoverable upon attorney's fees and costs allowable under covenant in deed.* Interest is recoverable, under Rev. St. sec. 2, ch. 74 (J. & A. ¶ 6691), upon reasonable attorney's fees and costs incurred and paid in defending a suit where the right to recover such fees and costs is based upon a covenant in a deed.

8. COVENANTS—*what questions are for court when defendant is in default.* Where a defendant is in default, in an action on a covenant in a deed, the only question for the court is as to the amount of the plaintiff's damages.

9. SET-OFF AND RECOUPMENT, § 8*—*when taxes paid by a grantor's*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*predecessors in title are properly matter of set-off in action on covenant of warranty.* In an action by a grantee against his grantor to recover on a covenant of warranty for a breach of such covenant providing for recovery of taxes paid by the grantee, a recovery by the grantor for taxes paid by the grantor's predecessors in title, if recoverable at all, could only be as a matter of defense under a plea of set-off.

10. APPEAL AND ERROR, § 1810*—*power of Appellate Court to render final judgment.* The Appellate Court has power, on an appeal, to render such judgment as the trial court should have rendered.

11. COVENANTS, § 37*—*when defendant in default may introduce evidence to reduce amount of damages.* Where a defendant in an action on a covenant in a deed is in default and thus the only question for the court is the amount of damages, the defendant may, nevertheless, introduce evidence to reduce the amount of damages, but not by way of set-off.

Appeal from the Circuit Court of De Kalb county; the Hon. CLINTON F. IRWIN, Judge, presiding. Heard in this court at the October term, 1915. Reversed in part on cross errors, and judgment in this court. Opinion filed April 26, 1916. Rehearing denied October 5, 1916.

MONTGOMERY, HART, SMITH & STEERE, for appellant; WILLIAM P. MACCRACKEN, JR., of counsel.

KNAPP & CAMPBELL, for appellee; JOHN R. COCHRAN, of counsel.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

This is an appeal from a judgment in favor of the Chicago Milling & Lumber Company of Cairo, appellee, for $4,795, in an action of covenant rendered in the Circuit Court of DeKalb county against Mary Boynton Townsend, appellant.

The covenant, which forms the basis of recovery, is a part of a warranty deed by which the appellant and nine other grantors on September 26, 1902, conveyed

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to the appellee 640 acres of timber land in Mississippi county, Arkansas, and is as follows: "It is hereby agreed that this warranty shall be for ten dollars ($10) per acre upon the lands hereby conveyed and, in the event of a breach hereof, the above named warrantors shall be liable to the said Chicago Mill & Lumber Company for said sum of ten dollars ($10) per acre for such lands as may be lost to said Chicago Mill & Lumber Company by a breach of the warranty herein, together with interest thereon at six per cent. (6%) per annum; all taxes and levee taxes that may have been paid by said Chicago Mill & Lumber Company, and a reasonable attorneys' fee for defending such suit or suits as may be brought by claimants for said lands in all suits in which claimants shall prevail, together with the costs of said suit."

The suit was commenced on April 24, 1913, against the appellant, Elmer E. Boynton and Frederick B. Townsend, who were all parties defendant in the original declaration. Afterwards, the appellee dismissed the case as to the defendants Frederick B. Townsend and Elmer E. Boynton, and by leave of court thereupon filed an amended declaration solely against the appellant. The amended declaration was filed November 16, 1914, and was supported by an affidavit of the amount due. The appellant moved to strike the affidavit of appellee's claim from the files upon the ground that the suit was not upon a contract for the payment of money, within the meaning of section 55 of the Practice Act (J. & A. ¶ 8592), which motion the court denied.

The appellant then filed pleas with an affidavit of merits, and subsequently, by leave of court, an amended affidavit of merits and additional pleas. The pleas filed by the appellant were *non est factum,* a plea denying all the allegations of the amended declaration with the exception of those setting forth the deed, and

the statutes of Arkansas, and a plea in which appellant set up repayment of taxes to appellee by the Osceola Land Company; also pleas based on parts of the Illinois statutes of limitations, and on the Arkansas Limitation Act by which actions of this kind are barred within five years. The amended affidavit of merits, which the appellant filed with her pleas, is as follows:

"State of Illinois ⎰ss.
   County of Cook. ⎱

"Wm. P. MacCracken, Jr., being first duly sworn, on oath says that he is one of the attorneys for the defendant in the above entitled cause and the duly authorized agent of the defendant in this behalf; that he verily believes that said defendant has a good defense to the above entitled suit, upon the merits, to the whole of the plaintiff's demand.

"Affiant further states that the nature of defendant's said defense is that each and all of the plaintiff's alleged causes of action are barred by the lapse of time, in that each and all of said causes of action arose in the State of Arkansas and that by the laws thereof an action thereon cannot be maintained by reason of the lapse of time, because they did not, nor did any or either of them, accrue to the plaintiff within five years next before the date of the filing of the amended declaration herein, as required by the laws of the State of Arkansas; and also in that they did not, nor did any or either of them, accrue to the plaintiff within 10 years next before the commencement of this suit, because at the time of the giving of the deed in plaintiff's amended declaration mentioned, the said Section Fourteen (14), in Township Fifteen (15) North, Range Eight (8) East, located in Mississippi County, Arkansas, was wild and unimproved land, and that the constructive possession of said land was in one A. H. Chatfield, who was the owner and holder of the legal title thereto, by reason of which fact the plaintiff herein was constructively evicted from said land at the date of the giving of the deed, towit: on the 26th day of September, A. D. 1902, which date was more than

10 years next before the commencement of this suit.
"Further affiant saith not.

Wm. P. MacCracken, Jr.

"Subscribed and sworn to before me this 15th day of
December, A. D. 1914.        Lorenzo K. Wood,
(Seal)                              Notary Public."

The appellee thereon moved to strike appellant's
amended affidavit of merits from the files, on the
ground that the facts therein set forth did not con-
stitute a defense to the appellee's right of recovery,
and also moved to strike all of appellee's pleas from
the files for want of a sufficient affidavit of merits.
The court sustained appellee's motion, struck the ap-
pellant's affidavit of merits from the files, and the
appellant's pleas. The appellant was thereupon de-
faulted and the case was set down for hearing to
assess appellee's damages.

The proof shows that the land conveyed by the deed
was located in the State of Arkansas, and that at the
time of the conveyance it was all wild and uncultivated
timber land; that appellee took possession of this land
in May, 1904, had it surveyed and the corners ascer-
tained, as established by Government survey, then es-
tablished logging camps and built structures for
housing men, horses and wagons, tools and machinery.
Appellee also built a railroad track across the land to
enable it to cut and remove the standing timber, and
was engaged in removing timber from the land about
May 1, 1908, when it was evicted by a decree of the
Chancery Court of Mississippi county, Arkansas.

The suit to dispossess appellee of the land in ques-
tion was commenced August 4, 1904, by the Osceola
Land Company, which claimed to have the legal title.
The appellee was served with process in that case, ap-
peared in court and defended the suit, relying upon
the deed, which it had received from appellant and
her cograntors, to establish its title. The Chancery

Court in October, 1905, entered a decree dismissing the complaint of the Osceola Land Company for want of equity, and finding the title of the land to be in appellee. The Osceola Land Company, however, appealed the case to the Supreme Court of Arkansas, which reversed the decree of the Chancery Court and remanded the case with directions to enter a decree cancelling the deeds under which appellee claimed its title, and quieting the title of the Osceola Land Company. It also remanded the case for further proceedings for the purpose of taking an account of the timber which appellee had taken from the land during its occupancy, and directed that the taxes paid by appellee and its predecessors in the title claimed, which were declared to be a lien upon the land.

The remanded case was redocketed May 1, 1906, in the Chancery Court, and a decree entered pursuant to the direction of the Supreme Court, and then referred to a special master to take proofs and report as to the taxes paid by appellee subsequent to 1902, and the taxes paid by those under whom appellee claimed title, giving the dates and amounts of the payment for each year, with interest at six per cent. per annum; also to take testimony and report how much and what kind of timber was cut and removed by appellee from the land, and the value thereof, with interest on the amount of the value, from the date the timber was removed.

The master took the evidence under the reference and on March 10, 1909, made a report concerning the matters embraced in the reference, which was approved by the court and a decree entered against the appellee in the sum of $15,461, and all costs, including a master's fee of $500. From this decree the appellee appealed to the Supreme Court of Arkansas where the decree was affirmed, but it was modified by reducing the master's fee to $250. The appellee afterwards, on April 2, 1910, satisfied this decree in full.

The ruling of the court striking the amended affida-- vit of merits from the files and the pleas filed in connection therewith is assigned by appellant as error, and she contends that this action is not a suit on a contract for the payment of money and therefore does not come within the provisions of section 55 of the Practice Act, whereby the plaintiff in a suit may file with his declaration an affidavit showing the nature of his demands, and the amount claimed to be due from the defendant, and thereby compel the defendant to file an affidavit of merits which must specify the nature of his defense, and show that he has a good defense to the whole or a portion of the plaintiff's demand; and it is further contended that the matters which are set up in the affidavit of merits constituted a good defense to the appellee's demand.

In reference to the first question raised, it may be said that a covenant is a species of express contract. (Vol. 2, Chitty's Blackstone, 126; *Clark v. Devoe*, 124 N. Y. 120; 11 Cyc. 1042.) And the covenant involved in this case expressly provides for the payment of money in the event of the breach thereof, thus coming clearly within the rule laid down by the Supreme Court in *Coursen v. Browning*, 86 Ill. 57; *Mestling v. Hughes*, 89 Ill. 389; *Myers v. Shoneman*, 90 Ill. 80. This is a suit, therefore, based upon an express contract for the payment of money.

The appellant's position that the affidavit contained matters which constituted a good defense to appellee's demand is equally untenable. One of the defenses alleged in the affidavit is that the action was barred by the ten-year limitation of the Illinois act, because the land conveyed by the warranty deed in question was wild and uncultivated land, and that the constructive possession of said land was in one A. H. Chatfield, who was the owner and holder of the legal title thereto, by reason of which fact the appellee was constructively

evicted from the land, at the date of the giving of the deed, namely, the 22nd day of September A. D. 1902, which date was more than ten years prior to the commencement of this suit. And appellant contends in this connection that "where land is unoccupied, the possession follows the legal title and an outstanding paramount title in a third person at the time a deed is given, carrying, as it does, possession with it, amounts to a constructive eviction, and there is a breach of all the covenants of warranty, *eo instanti,* and the statute runs from the date of the deed." But no allegation appears in the affidavit from which the inference can be legally drawn that the land was unoccupied; that the appellee did not take actual possession of the land after the execution and delivery of the deed in question. In the absence of such averment, it must be presumed that the land was occupied, and that appellee did take possession of the land; as the evidence shows it did, and that it was actually evicted therefrom subsequently, that is to say, about May 1, 1908. No breach of the covenant, therefore, occurred, and no cause of action accrued to appellee until the time .it was actually evicted by the holder of the paramount title, and it could not have maintained suit against the grantors until that time. (*Scott v. Kirkendall,* 88 Ill. 465; *Moore v. Vail,* 17 Ill. 185; *Roberson v. Tippie,* 126 Ill. App. 582.) The statute of limitations did not begin to run until the cause of action had accrued to appellee. (*Davis v. Munie,* 235 Ill. 620.)

The other defense specified in the amended affidavit of merits is that the appellee's action was barred by lapse of time, because the Statute of Limitations of the State of Arkansas barred actions of this character after the lapse of five years, and appellant claims that by virtue of section 20 of the Illinois Limitation Act (J. & A. ¶ 7215) the Arkansas statute applied. It is well settled, however, that the Arkansas statute of

limitations does not apply unless the parties were non-residents of Illinois at the time the cause of action accrued. This is the construction placed upon section 20 of the Illinois Act by the courts of review in this State. (*Davis v. Munie*, 235 Ill. 620; *Wooley v. Yarnell*, 142 Ill. 442, 46 Ill. App. 112; *Berry v. Krone*, 46 Ill. App. 82; *Story v. Thompson*, 36 Ill. App. 370.)

There is no averment in the affidavit that the appellant and appellee were nonresidents of Illinois at the time the cause of action accrued.

For the reasons stated, the trial court did not err in striking the amended affidavit of merits and appellant's pleas from the files.

Upon the hearing for the assessment of damages, the court allowed the sum of $10 per acre for the 640 acres of land conveyed to appellee, and six per cent. interest on the total sum from the date of the deed, September 26, 1902. The court also allowed the amounts, with interest, claimed by appellee as a part of the cost of litigation in the State of Arkansas, but limited the cost of the litigation, and attorneys' fees which appellee had incurred and paid, to the items which accrued prior to the redocketing of the case and the reference to the special master for the accounting for timber removed, and the court refused to allow attorneys' fees and expenses of the litigation which appellee had incurred and paid after the reference to the master. The court also refused to assess as damages the amount of the general and levee taxes which appellee had paid, and for which appellee had already received credit in the accounting before the master. And the refusal of the court to allow appellee these additional damages claimed is assigned as cross errors.

The court allowed the appellant a set-off of $644 as a credit on the amount of appellee's damages. This set-off was the sum total of taxes and interest thereon

which had been paid by the predecessors of appellee in the title claimed. The amount of these taxes and interest had been allowed to appellee as a credit on the sum found to be due for the timber it had taken from the land in question. The allowance of this set-off is also assigned by appellee as a cross error.

We are of opinion that the court did not err in allowing interest on the sum of money to which appellee became entitled under the terms of the covenant from the date of the deed containing the covenant. Where a contract for the payment of money contains a stipulation for the recovery of interest but does not, either expressly or impliedly, fix a time from which such interest is to be computed, the interest should be computed from the date of the contract. (22 Cyc. 1538; 6 Am. & Eng. Encyc. of Law, 1040; *Miller v. Cavanaugh,* 99 Ky. 377; *Graham v. Burgiss,* 78 S. C. 404, 59 S. E. 29; *Smith v. Goodlett,* 92 Tenn. 230, 21 S. W. 106.)

Considering the cross errors assigned by appellee, we are of opinion that the court properly refused to allow appellee, as a part of the damages to be recovered, the amount of the general taxes and levee taxes paid by it. These taxes had already been allowed to the appellee in the accounting before the master in chancery in Arkansas, as a credit against the amount due for timber taken from the land in question, and appellee had been reimbursed thereby for the taxes so paid, and they were no longer a subsisting claim against the appellant at the time its damages were assessed. But the court should have allowed all reasonable attorneys' fees and the entire cost of the Arkansas case, which the appellee had incurred and paid in the defense both before and after the case had been remanded and redocketed by the order of the Supreme Court of Arkansas. The matter of accounting was a part of the case involving the title of the

land, which appellee had to defend against. Appellee had removed the timber, which was a part of the land, on the assumption that it had title to it under appellant's deed and warranty, and the same question of the title was involved in the right to the timber as to the land itself. The Osceola Land Company having established its paramount title to the land had a legal right to recover the timber or the value of the timber taken, and the accounting for the timber taken was a part of the suit for the recovery of the land and a necessary part of the defense involved in the case.

The right to recover reasonable attorneys' fees and the cost incurred and paid by appellee in the Arkansas litigation being based upon an instrument in writing, appellee is also entitled to recover interest on the payments made in that regard, at the rate of five per cent. per annum, from the date of payment under section 2, chapter 74, of the Revised Statutes (J. & A. ¶ 6691). *Elgin, J. & E. Ry. Co. v. Northwestern Nat. Bank,* 165 Ill. App. 35; *A. B. Dick Co. v. Sherwood Letter File Co.,* 157 Ill. 325; *Holmes v. Standard Oil Co.,* 183 Ill. 70; *People v. Pacific Surety Co.,* 155 Ill. App. 586; *Leman v. United States Fidelity & Guaranty Co.,* 137 Ill. App. 258.

We are of opinion that the trial court erred in allowing the appellant the set-off of $644 on account of taxes paid by appellee's predecessors in title. If appellant was entitled to recover for this claim, which may well be doubted, it could not do so except as a matter of defense under a plea of set-off. Appellant being in default, however, the only question that remained for the court to inquire into was the amount of appellee's damages. (*Town of South Ottawa v. Foster,* 20 Ill. 296; *Herrington v. Stevens,* 26 Ill. 298; *Sandoval Zink Co. v. Hale,* 133 Ill. App. 196.)

While appellant had a right, though defaulted, to introduce evidence tending to reduce the amount of dam-

ages claimed, she was not entitled to introduce evidence by way of set-off. (*Barnes v. Sisson*, 44 Ill. App. 327; *Jerseyville Shoe Mfg. Co. v. Bell*, 125 Ill. App. 496; *Sandoval Zink Co. v. Hale, supra*.) It is apparent, therefore, the judgment rendered is not for the proper amount of damages to which the appellee is entitled and is partly erroneous. This court has power to render such a judgment as the trial court should have rendered. (*Minnesota Mut. Life Ins. Co. v. Welsh*, 131 Ill. App. 103; *Manistee Lumber Co. v. Union Nat. Bank*, 143 Ill. 490.)

The C. D. Boynton Estate and Elmer E. Boynton, together, have paid appellee in liquidation of its claim, on March 13, 1914 ..................................................$ 6,666.66; and the trial court therefore properly took the date of this payment, and the payment, as the basis for the adjustment of the damages.

The court allowed as damages:

$10.00 per acre for the 640 acres of land.................$ 6,400.00
and six per cent. interest on $6,400 from date of deed, September 26, 1902........................................... 4,402.13
and the cost of litigation, prior to remanding and redocketing the case, May 1, 1908, with five per cent. interest from the dates of payment of the various items, to March 13th 1914 .................................................. 1,021.11

Total..............$11,823.24

To this should be added the following additional items of reasonable attorneys' fees paid, and necessary cost incurred in defense of the Arkansas case, and five per cent. interest from the date of payment of the same to March 13th 1914, viz.:

1908.
(From date of payment to March 13th, 1914)
Sept. 26, W. C. Gilbert's expenses...............$   5.00
       Interest ..............................     1.37
Sept. 30, M. L. Mathis, expenses................     3.25
       Interest ..............................      .88
Oct.  19, W. C. Gilbert's expenses..............     5.00
       Interest ..............................     1.35
Nov.  30, W. J. Lamb, attorney, expenses........    26.00
       Interest ..............................     6.88
1909.
April 20, Premium on appeal bond...............    80.00
       Interest ..............................    19.49
Sept. 30, W. J. Lamb, court costs...............    11.50
       Interest ..............................     2.58
1910.
Jan.  31, W. C. Gilbert's expenses..............    25.00
       Interest ..............................     5.15
Jan.  31, W. J. Lamb, printing briefs...........    31.50
       Interest ..............................     6.49
March 28, Copy of opinion, Ark. Sup. Court......     1.50
       Interest ..............................      .30

| | | |
|---|---|---|
| March 31, | J. C. Coston, court costs: ($80.50 of a total of $426.25 shown under this date was on account of costs, first appeal; and the trial court allowed the $80.50, thus leaving balance of) .......................... | 346.75 |
| | Interest ........................... | 68.28 |
| March 31, | W. C. Gilbert's expenses............... | 10.00 |
| | Interest ........................... | 2.00 |
| April 30, | W. J. Lamb's fees and expenses......... | 276.25 |
| | Interest ........................... | 53.44 |
| July 30, | W. J. Lamb, court costs................ | 42.85 |
| | Interest ........................... | 7.75 |

|  | $ 1,040.56 |
|---|---|
| Which makes the total amount of appellee's damages, on March 13, 1914............................. | $12,863.80 |
| Deducting from this sum the payment of $6,666.66 made by C. D. Boynton Estate and Elmer E. Boynton, leaves a balance due as of that date of....... | $ 6,197.14 |
| And appellee is entitled to five per cent. interest on this balance from the date of the adjustment, March 13, 1914, to the date of the judgment here, which amounts to the sum of......................... | $ 630.89 |
| and this should be added to the above balance. The judgment entered here, therefore, should be for.... | $ 6,828.03 |

The judgment of the trial court is therefore reversed in part, on cross errors, and it is ordered that judgment be entered in this court in favor of appellee against the appellant for $6,828.03.

*Reversed in part on cross errors, and judgment in this court.*